IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LUTHER S. CHRONISTER                                                                              PLAINTIFF

    v.                           Civil No. 2:22-cv-02100-PKH-MEF

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                                    DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

    Plaintiff, Luther S. Chronister, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

### I.   Procedural Background

    Plaintiff filed his application for benefits on May 15, 2019, alleging disability beginning May 3, 2019, due to diabetes, neuropathy, spinal stenosis, herniated disc, back pain, bulging discs, chronic pain, high blood pressure, and depression.  (ECF No. 11, pp. 21, 421-427, 450).  Plaintiff was 44 years old on the alleged disability onset date, has a marginal education, and is unable to perform any past relevant work.  (*Id*., p. 34-35, 446).  His application was denied initially and on reconsideration.  (*Id*., pp. 21, 369-371, 373-375).  At Plaintiff's request, an Administrative Law Judge ("ALJ"), Edward M. Starr, held an administrative hearing on August 31, 2020, via telephone due to the extraordinary circumstance presented by the COVID-19 pandemic.  (*Id*., pp. 286-318, 394).  Plaintiff was present and represented by counsel.

On August 10, 2021, the ALJ concluded that Plaintiff's degenerative disc disease, diabetes mellitus, peripheral neuropathy, and osteoarthritis were severe, but he concluded these impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (ECF No. 11, pp. 23-26). He found Plaintiff capable of performing:

> sedentary work as defined in 20 C.F.R. § 404.1567(a) except that he cannot do ropes, ladders, or scaffolds and must avoid hazards, including moving machinery and unprotected heights. He can occasionally do stairs and ramps, balance, crawl, kneel, stoop, and crouch. He can frequently finger, handle, and reach bilaterally. He can frequently operate foot controls bilaterally. (*Id.*, p. 26).

With the assistance of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work as a cutter and paster, DOT # 249.587-140, of which there are 11,800 jobs in the national economy; a tube operator, DOT # 239.687-014, of which there are 3,000 jobs in the national economy; and an addresser, DOT # 209.587-101, of which there are 2,700 jobs in the national economy. (ECF No. 11, p. 35). Plaintiff was found not to be under a disability from his alleged onset date through the date of the ALJ's decision. (*Id.*).

The Appeals Council denied Plaintiff's request for review on April 28, 2022. (ECF No. 11, pp. 7-12). Plaintiff then filed his Complaint to initiate this action on December 21, 2021. (ECF No. 2). This matter is before the undersigned for report and recommendation. Both parties have filed appeal briefs (ECF Nos. 13, 15), and the case is ready for decision.

## II. Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support

it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). The fact finder only

considers a plaintiff's age, education, and work experience in the light of his residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

Plaintiff raises four issues on appeal: (1) whether the ALJ fully and fairly developed the record; (2) whether the ALJ erred at step two; (3) whether the ALJ properly considered Plaintiff's subjective complaints; and (4), whether substantial evidence supports the ALJ's RFC finding. After thoroughly reviewing the record, the undersigned finds that the ALJ properly developed the record, did not err at step two, properly evaluated the Plaintiff's subjective complaints, and substantial evidence supports the ALJ's RFC finding.

### A. The ALJ Fully and Fairly Developed the Record

Plaintiff first contends that the ALJ failed to develop the record fully and fairly when he did not order a mental status consultative examination, especially when state agency physicians did not have the opportunity to review more recent treatment records. (ECF No. 13, pp. 6-12).

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). The ALJ is not, however, required to function as the claimant's substitute counsel, but only to develop a reasonably complete record. *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994). While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted).

4

Here, the approximately 2,000-page record contains several years of treatment for Plaintiff's degenerative disc disease, diabetes mellitus, peripheral neuropathy, and osteoarthritis. These treatment notes provide multiple objective medical findings, including MRIs and EKGs; a longitudinal record of Plaintiff's diabetes treatment; and an operative report and recovery records for C5-C7 bilateral laminectomies for cervical spondylitis myelopathy.  The record also contains opinion evidence from state agency consulting physicians.  The record primarily tracks Plaintiff's treatments for physical impairments, and the ALJ obtained additional evidence as needed.  He obtained three additional pieces of evidence post-hearing—a physical consultative examination report with updated imaging results, medical interrogatories regarding Plaintiff's work-related limitations, and vocational interrogatories completed by the vocational expert.

While Plaintiff insists that the ALJ should have obtained an additional mental status consultative examination, an ALJ need only order additional examinations if insufficient evidence exists in the record to make an informed decision on a claim.  Plaintiff's reliance on mental consultative examinations completed more than 10 years before the relevant period is unavailing. Treatment records from the relevant period reveal only mild mental status findings and effective control of symptoms with medication.  Plaintiff's reported limitations stemming from mental impairments included waking up in a bad mood, irritability, and occasional memory problems. (ECF No. pp. 283, 365, 762-771).  Medications improved his symptoms and examinations generally showed mild mental status findings.  (*Id*.).  There is no evidence that his mental impairments worsened after the state agency physicians reviewed his records such that additional opinion evidence was necessary to reassess his mental limitations.  Excepting depression, Plaintiff's allegations of disability were based primarily on physical impairments.  As such, we cannot say that the record contained insufficient evidence for the ALJ to determine Plaintiff's

5

mental limitations. Therefore, he was not required to order additional mental status consultative examinations.

The Court also notes Plaintiff's unfounded attacks on the medical expert who completed medical interrogatories post-hearing. Throughout the Plaintiff's brief, he makes known his distrust and dislike of this physician's conclusions and practices. We are most disturbed by Plaintiff's apparent distrust and dislike of this physician's country of origin and medical education prior to practicing in the United States. The record includes this physician's curriculum vitae, and Plaintiff does not provide any authority to challenge the Agency's decision to utilize this physician as a medical expert in this case. As such, we find Plaintiff's comments on this issue fail to support his arguments.

Given the robust record, including objective medical findings, opinion evidence, and Plaintiff's reported functionality, we find that the ALJ developed the record fully and fairly when he obtained vocational interrogatories, a physical consultative examination, and medical interrogatories post-hearing.

### B.     The ALJ Did Not Err at Step Two

Plaintiff next insists that the ALJ erred in finding medically determinable impairments of depression and anxiety non-severe. (ECF No. 13, pp. 13-14).

At Step Two, a claimant has the burden of providing evidence of functional limitations in support of their contention of disability. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id*. (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); 20 C.F.R. § 404.1521(a)). "If the impairment would have no

more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id*. (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)).

A review of the record reveals conservative treatment for mental impairments, generally mild examination findings, and improved symptoms upon discharge from counseling. The Guidance Center treatment provider, Angela Heckle, LCSW, diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder in October 2019. (ECF No. 11, pp. 762-771). Plaintiff described waking up in bad moods and that his wife knew to stay away from him on those days. (*Id*.). A mental status examination showed a neat appearance, normal motor activity, a full affect, normal attention, cooperative behavior, and fair insight and judgment. (*Id*., pp. 820-821). With continued therapy, a follow-up mental status examination showed a euthymic mood, no memory impairment, normal attention, and good insight and judgment. (*Id*., p. 365). Plaintiff was ultimately discharged from treatment in March 2021, having attained moderate improvement. (*Id*., p. 283). In addition, non-examining consultative examiners assessed only mild limitation due to mental impairments. Dr. Rachel Morrisey opined, in August 2019, that the medical evidence of record failed to show evidence of significant abnormalities in behavior, thought content or process, perception, orientation or memory. (*Id*., p. 327). Dr. Kevin Santulli affirmed this finding upon reconsideration in December 2019. (*Id*., p. 358).

In his decision, the ALJ enumerated the four broad functional areas he considered when he determined that Plaintiff's depression and anxiety were non-severe impairments. (ECF No. 11, pp. 17-18). Also known as paragraph B criteria, the functional areas are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4), adapting or managing oneself. *See* 20 C.F.R. Part 404, Subpart P,

Appendix 1. The ALJ found only mild limitation in each area. (ECF No. 11, pp. 17-18). To support his findings, he noted that Plaintiff reported no problems with memory or following written or spoken instructions. Plaintiff exhibited some short-term memory impairment during one examination, but none during other examinations. Treatment providers noted normal thought process. While Plaintiff demonstrated a depressed and irritable mood during some exams, others showed normal mood and affect. Plaintiff demonstrated normal eye contact, normal attention, and normal motor activity. The ALJ acknowledged reported mood swings due to uncontrolled diabetes. He noted that treatment records showed improved depression and anxiety symptoms with medication. Plaintiff was calm and participated well in therapy, and the ALJ noted that his personal care was limited by physical impairments, not mental ones. Upon considering this evidence, the ALJ determined that Plaintiff's mental impairments caused no more than minimal limitation, and, therefore, were non-severe. (*Id*.).

The treatment record certainly reveals diagnoses of mental impairments and some related symptoms, but it also shows improvement with medication, largely normal mental status findings, and Plaintiff's ability to follow instructions despite mood swings and occasional irritability. The mere diagnosis of a condition does not equate to a disability. *Brown v. Astrue*, No. 2:12-cv-00011-SWW, 2013 WL 500357, *4 (E.D. Ark. Feb. 11, 2013) (citing *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730-31 (8th Cir. 2003) (finding that a diagnosis alone has minor significance and that the dispositive question remains whether the claimant's functioning in various areas is markedly impaired, not what one doctor or another labels his disorder)). Absent evidence of record to establish functional limitations resulting from Plaintiff's diagnosed mental impairments, we cannot say that the ALJ erred in finding that Plaintiff's mental impairments were non-severe.

### C. The ALJ Properly Evaluated the Plaintiff's Subjective Complaints

In his third issue, Plaintiff asserts that the ALJ failed to properly analyze his subjective complaints. (ECF No. 13, pp. 14-16). He disagrees with the ALJ's finding that his subjective complaints of pain were inconsistent with evidence of conservative care, except for cervical spine surgery, and his reported level of activity. (*Id.*).

The ALJ is required to consider all the evidence relating to Plaintiff's subjective complaints, including: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitation and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5), functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In so doing, the ALJ must also consider the claimant's prior work record, observations made by third parties, and the opinions of treating and examining physicians. *Id*.

An ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them. *Id*. However, "[a]n ALJ . . . may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015) (citing *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted)). The Eighth Circuit has observed, "[o]ur touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). When an ALJ states that he discharged his official duties as stated in his decision, we presume he has done so. *See, e.g., Willburn v. Astrue*, 626 F.3d 999, 1003-04 (8th Cir. 2010) (applying the presumption of regularity to conclude the ALJ discharged his official duties as described).

Here, a review of the record reveals a history of multiple medical issues, including bilateral laminectomies from C5 through C7 and very poorly controlled diabetes. The ALJ stated that he considered the following six factors in evaluating Plaintiff's subjective complaints: (1) the nature,

9

location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) type, dosage, effectiveness, and adverse side-effects of any pain medications; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6), the claimant's daily activities. (ECF No. 11, pp. 26-34).

The ALJ acknowledged Plaintiff's history of degenerative disc disease, which ultimately led to bilateral laminectomies from C5 through C7, and determined that effectiveness of treatment, functional restrictions, and reported activities were inconsistent with Plaintiff's complaints of disabling pain. (ECF No. 11, pp. 28-31). Following surgery, Plaintiff repeatedly reported improvement. Upon discharge from surgery, Plaintiff reported doing very well. His pain was well controlled, and he was walking without problems. (ECF No. 11-1, p. 573). The two-week follow up treatment note confirms Plaintiff's improvement; he reported improved manual dexterity, resolution of paresthesia in bilateral hands, improved gait, and being off opiate medication. (*Id.*, p. 728). The treatment provider also noted a well-healed posterior cervical midline incision. (*Id.*).

The ALJ considered the treatment provider's advice to refrain from lifting more than 10 pounds, but to continue walking and using stairs as he was doing quite well just two weeks after surgery. (ECF No. 11, p. 31). Plaintiff reported to his treatment provider that he "put his truck on a manual car jack and changed the tires on it" less than two weeks following his bilateral laminectomies. (ECF No. 11-1, p. 728). After being advised not to undertake such significant weight-lifting activities, Plaintiff stated that he understood and agreed that he would not engage in such activities going forward. (*Id.*).

Plaintiff continued to report improvement of symptoms throughout the recovery period such that his treatment provider advised him to increase his activity as tolerated. (ECF Nos. 11-1,

p. 776; 11-2, pp. 4-5). The ALJ noted a July 2020 treatment note in which Plaintiff reported that he was virtually pain free. (ECF No. 11, p. 29). As the ALJ discussed the effectiveness of surgery, the treatment provider's observation of improved symptoms, and Plaintiff's engagement in significant weight-lifting tasks following surgery, we find the ALJ properly considered Plaintiff's subjective complaints of pain with respect to his cervical spine issues.

As to diabetes, the ALJ considered Plaintiff's non-compliance with treatment. (ECF No. 11, p. 31). The record demonstrates Plaintiff's history of uncontrolled diabetes. In May 2019, Plaintiff admitted to his treatment provider that he did not check his blood sugar regularly, though he knew he was supposed to do so. (*Id.*, p. 144). In October 2019, Plaintiff again admitted that he did not monitor his glucose at home and that he stopped using his long-acting insulin. (*Id.*, p. 130). The treatment provider described Plaintiff's diabetes as "uncontrolled" in January 2020. (*Id.*, p. 125). Plaintiff acknowledged that his endocrinologist instructed him to check his glucose four times daily. He admitted that he did not follow this recommendation, but "sometimes" checked it once a day. It was usually between 250-300. (*Id.*). Plaintiff reported taking an unspecified long-acting insulin in April 2020. (ECF No. 11-1, pp. 913). He was checking his glucose three times daily, which was still fewer than his endocrinologist recommended. Plaintiff was to be checking his glucose four times daily to be eligible for an insulin pump. (*Id.*). In August 2020, Plaintiff also admitted that he was not following a diabetic diet. (ECF No. 11-2, pp. 315-316). He reported not eating for up to three days and would not use Novolog on those days. (*Id.*). Plaintiff's diabetes remained uncontrolled in June 2021. (ECF No. 11, p. 53).

In evaluating Plaintiff's subjective statements, the ALJ specifically considered his non-compliance with treatment as inconsistent with his subjective complaints of pain. Plaintiff resisted treatment measures for diabetes when he did not check his glucose regularly, did not follow a

diabetic diet, and did not abide by recommended insulin dosing. (ECF No. 11, pp. 31). As such, we find the ALJ properly considered Plaintiff's subjective complaints with respect to issues related to diabetes.

### D.     Substantial Evidence Supports the ALJ's RFC Finding

Plaintiff also contends that the ALJ's RFC determination is not supported by substantial evidence. (ECF No. 13, p. 16). While Plaintiff insists that evidence supports additional limitations for repetitive manipulatives and mental impairments, Plaintiff essentially interprets the evidence differently than the ALJ. This cannot be the basis for additional limitations.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. A disability claimant has the burden of establishing his RFC. *Vossen*, 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller*, 784 F.3d at 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The evidence before the Court supports the ALJ's RFC determination and does not support additional limitations for repetitive manipulatives or mental impairments. As to repetitive manipulatives, medical evidence shows improvement in Plaintiff's bilateral upper extremity pain

12

following successful bilateral laminectomies. While Plaintiff's pain was not eliminated, he consistently reported improved manual dexterity, and a treatment provider noted that he was completing all his activities of daily living. (ECF No. 11-1, p. 776). The ALJ also considered opinion evidence assessing Plaintiff capable of only frequently reaching, handling, and fingering; he found this assessment consistent with evidence of mildly reduced grip strength but intact dexterity, and decreased sensation but intact strength in the hands. (ECF No. 11, p. 33). Additionally, medical evidence simply does not support limitations based on mental impairments. As already discussed, the ALJ properly found Plaintiff's depression and anxiety non-severe. Thus, the need for additional limitations has not been proven.

### IV. Conclusion

For the reasons discussed above, it is recommended that the Commissioner's decision to deny benefits be affirmed and that Plaintiff's Complaint (ECF No. 2) be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 26th day of July 2023.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE